ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>JULIO J. MALDONADO GONZÁLEZ<br><br>Peticionario | KLCE202401000 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>J VI2015G0015<br><br>Sobre:<br>Art. 93A CP 2012 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 3 de octubre de 2024.

El 16 de septiembre de 2024, Julio J. Maldonado González (peticionario o señor Maldonado González), por derecho propio y en *forma pauperis,* presentó un escrito titulado *Solicitud de Corrección de Sentencia.* Nos solicitó que revisemos una *Resolución* que emitió el Tribunal de Primera Instancia, Sala de Ponce (TPI), el 22 de agosto de 2024, notificada el 26 de agosto de 2024. Mediante ésta, el TPI denegó la *Moción por Derecho Propio* que presentó Maldonado González.

Por los fundamentos que exponemos, *denegamos* la expedición del recurso.

## I.

Surge del expediente que, por un evento ocurrido el 29 de marzo de 2015, el peticionario Julio J. Maldonado González fue sentenciado a 50 años de prisión, en la acción criminal J VI2015G0015. Ello, por infracción al Artículo 93 del Código Penal

de 2012, Ley 146-2012, 33 LPRA sec. 5142, en modalidad de asesinato en segundo grado. A su vez, en la causa criminal J LA2015G0122, el Tribunal de Instancia le impuso al peticionario una condena de tres (3) años, con agravamiento de la pena, que se duplicó a seis (6) años de prisión. Esto por quebrantar el Artículo 5.05 de la Ley de Armas de Puerto Rico, Ley 404-2000[1]. Todo para un total de cincuenta y seis (56) años de prisión.

En su recurso, Maldonado González alega que le solicitó al foro primario que corrigiera la sentencia de cincuenta y seis (56) años. Alegó que fue sentenciado a 50 años por error, ya que el Artículo 307 del Código Penal de 2012 estipula 15 años por el Artículo 93 (Asesinato) en su modalidad de Segundo Grado y 25 años en Segundo Grado Severo. Indicó que el Artículo 94 del Código Penal de 2012, relacionado a la pena de los asesinatos, fue incluido en el texto enmendado por otras leyes.

De igual manera, sostuvo que, bajo la Ley de Armas del 2000, también existe la posibilidad de que el foro primario erró. Indica que se le duplicó la pena por el Artículo 5.05 de la Ley de Armas, pero el Artículo 67 establece que, de existir circunstancias agravantes, solo se podrá aumentar la pena en un 25% y no el doble.

El peticionario incluyó como parte del apéndice, la Resolución que emitió el foro primario el 22 de agosto de 2024, en la que denegó su pedido. También acompañó las Sentencias emitidas el 10 de noviembre de 2015 en los casos criminales JVI2015G0015 y JLA2015G0122, antes mencionados. El peticionario no incluyó como parte del apéndice la *Moción por Derecho Propio*, que dio lugar a la acción que atendemos. No

---

[1] Derogada y sustituida por la Ley 168-2019.

obstante, del escrito que presentó ante nuestro foro, podemos razonablemente colegir su petitorio al Tribunal Primario.

Recibido el recurso asignado como *Certiorari,* le concedimos al recurrido hasta el 27 de septiembre de 2024, para presentar su posición.

El 26 de septiembre de 2024, compareció la Oficina del Procurador General de Puerto Rico para solicitar la desestimación. Alegó que carecemos de jurisdicción, toda vez que el peticionario no perfeccionó el recurso, pues no lo notificó a las partes, según establece la Regla 33 (B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.   Denegamos su petición.

Corroboramos con la Secretaría de este Tribunal, quien nos acreditó que el 24 de septiembre de 2024, emitió una *Carta informando presentación de recurso en el Tribunal de Apelaciones*. Surge de la carta que esta se notificó, con copia del recurso, a todas las partes del caso. Con ello, damos por cumplido el requisito de notificación que establece la Regla 33 (b) del Reglamento del Tribunal de Apelaciones, *supra*.

Tras evaluar el recurso presentado, por lo que aquí resolvemos, y para lograr el más eficiente despacho del asunto, prescindimos de solicitar ulteriores escritos no jurisdiccionales, a tenor con la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, *supra*.

## II.

## A.

El recurso de *Certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Pueblo v. Rivera Montalvo, 205 DPR 352, 372 (2020). A diferencia del recurso de apelación, el tribunal superior puede

expedir el auto de *certiorari* de manera discrecional. <u>Pueblo v. Rivera Montalvo</u>, *supra*; <u>Pueblo v. Díaz de León</u>, 176 DPR 913, 917-918 (2009). Sin embargo, esa discreción no es irrestricta. Así, el Tribunal Supremo ha expresado que los jueces, "so pretexto de ejercer su discreción, no pueden olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia". <u>Pueblo v. Rivera Montalvo</u>, *supra;* <u>Pueblo v. Ortega Santiago</u>, 125 DPR 203, 214 (1990).

El Tribunal Supremo ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. <u>Pueblo v. Rivera Santiago</u>, 176 DPR 559, 580 (2009); <u>Pueblo v. Ortega Santiago</u>, *supra*, pág. 211. El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". <u>Pueblo v. Ortega Santiago</u>, *supra*. Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. <u>Pueblo v. Rivera Santiago</u>, *supra*, pág. 581.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es norma reiterada que los foros apelativos no debemos intervenir con las determinaciones interlocutorias de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial." Job Connection Center v. Sups. Econo, 185 DPR 585, 602 (2012); Zorniak Air Servs. v. Cessna Aircraft Co., 132 DPR 170, 181 (1992).

**B.**

El Artículo 92 del Código Penal de 2012 define el delito de asesinato como el acto de "dar muerte a un ser humano a propósito, con conocimiento o temerariamente". 33 LPRA sec. 5141.

En particular, el Artículo 93 de referido Código Penal tipifica el asesinato en primer grado como la muerte perpetrada "por medio de veneno, acecho, tortura, o a propósito o con

conocimiento". 33 LPRA sec. 5142. El referido Artículo 93 también dispone que, "[t]oda otra muerte de un ser humano causada temerariamente constituye asesinato en segundo grado." Íd.

En este último escenario, el Artículo 94 del Código Penal establece que "a toda persona convicta de **asesinato en segundo grado** se le impondrá pena de reclusión por un término fijo de cincuenta (50) años."

De otro lado, el Artículo 307 del Código Penal de 2012, dispone como sigue:

Cláusula de transición para la fijación de penas en las leyes penales especiales.

Los delitos graves que se tipifican en leyes penales especiales bajo el sistema de clasificación de delitos de la Ley 149-2004, según enmendada, conocida como "Código Penal del Estado Libre Asociado de Puerto Rico", estarán sujetos a las siguientes penas, hasta que se proceda a enmendarlas para atemperarlas al sistema de sentencias fijas adoptado en el Código de 2012, según enmendado.
[…]

(b) Delito grave de segundo grado severo — conllevará una pena de reclusión por un término fijo de veinticinco (25) años. En tal caso, la persona puede ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco (75) por ciento del término de reclusión impuesto.

(c) Delito grave de segundo grado — conllevará una pena de reclusión por un término fijo de quince (15) años. En tal caso, la persona puede ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco (75) por ciento del término de reclusión impuesto.
33 LPRA sec. 5415.

En cuanto la Ley de Armas de Puerto Rico, el Artículo 5.05, de referida Ley 404-2000, vigente al momento de los hechos, disponía lo siguiente:

Portación y Uso de Armas Blancas

Toda persona que sin motivo justificado usare contra otra persona, o la sacare, mostrare o usare en la comisión de un delito o su tentativa, manoplas, blackjacks, cachiporras, estrellas de ninja, cuchillo, puñal, daga, espada, honda, bastón de estoque,

arpón, faca, estilete, arma neumática, punzón, o cualquier instrumento similar que se considere como un arma blanca, incluyendo las hojas de navajas de afeitar de seguridad, garrotes y agujas hipodérmicas, o jeringuillas con agujas o instrumentos similares, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de **tres (3) años**. De mediar circunstancias **agravantes**, la pena fija establecida podrá ser aumentada hasta un máximo de **seis (6) años**; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un (1) día. […](Énfasis nuestro).

25 LPRA sec. 458d

Por último, se presume que los tribunales actúan con corrección al emitir una sentencia. Pueblo v. Rodríguez, 193 DPR 987, 999 (2015); Pueblo v. Prieto Maysonet, 103 DPR 102, 107 (1974).

### III.

El peticionario mencionó que cabe la posibilidad de que el Foro Primario erró al imponerle la sentencia de 50 años por el delito de asesinato en segundo grado. Sostuvo que el Artículo 307 del Código Penal, *supra*, establecía una pena de 15 años en la modalidad de segundo grado y 25 años en segundo grado severo. De igual forma indicó que bajo el Artículo 5.05 de la Ley de Armas, *supra*, se le duplicó erróneamente la pena.

Al observar detenidamente el expediente del recurso de *Certiorari,* junto al derecho aplicable, concluimos que no procede la expedición del auto.

El Artículo 94 del Código Penal, *supra*, establece que por el delito de asesinato en segundo grado, la pena fija es de 50 años. El Artículo 307 del Código Penal, *supra*, no aplica en este caso, pues ese artículo se trata de una cláusula de transición entre el Código Penal de 2004, hasta que se atempere al sistema de sentencias fijas adoptado en el Código de 2012. Los hechos en este caso ocurrieron en el año 2015 cuando ya estaba en pleno

vigor el Código Penal de 2012. Este último fue el Código Penal que el Tribunal aplicó al imponer la sentencia.

De igual forma, la Ley de Armas de 2000 establecía una pena de seis (6) años por infracción al Artículo 5.05, en su modalidad agravada. Esa fue la condena que el foro primario le impuso al peticionario. Al sumar las penas de ambos delitos, arroja un total de 56 años, tal como el foro primario lo dictaminó.

Así que, luego de analizar los planteamientos esbozados por el peticionario y los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, no existen circunstancias que ameriten nuestra intervención con la *Resolución* recurrida. No se desprende que haya mediado prejuicio o parcialidad en el dictamen recurrido, ni que éste sea contrario a Derecho. Los argumentos del *peticionario* tampoco nos mueven a ejercer nuestra función discrecional e intervenir con la decisión del foro recurrido. En consecuencia, procede denegar la petición ante nuestra consideración.

**IV.**

Por los fundamentos antes expuestos, se *Deniega* la expedición del auto solicitado.

Disponemos que la Secretaria del Departamento de Corrección y Rehabilitación debe entregar copia de esta determinación al Peticionario, en la institución correccional donde se encuentre recluido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones